# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1106V
UNPUBLISHED

| | |
|---|---|
| KIMBERLY HARTMAN,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: September 14, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Ruling on<br>Entitlement; Influenza (Flu); Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA). |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On July 30, 2019, Kimberly Hartman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of her receipt of an influenza ("flu") vaccine on October 29, 2018, she suffered a shoulder injury related to vaccination ("SIRVA") as defined on the Vaccine Injury Table (the "Table"). Petition (ECF No 1) at 1; *see also* Amended Petition (ECF No. 29) at 1 (expressly alleging a Table injury). The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that the preponderance of evidence supports that Petitioner suffered the onset of shoulder pain within 48 hours after vaccination, and that Petitioner is entitled to compensation for a right SIRVA.

## I. Relevant Procedural History

After initiating her claim, Petitioner filed additional records and a statement of completion in February 2020. Nearly nine months later, Respondent completed his formal review of the claim and invited settlement discussions. ECF No. 21. Petitioner conveyed a settlement demand for pain and suffering, plus "nominal" out of pocket expenses, promptly on November 22, 2020, to which Respondent countered on December 23, 2020. ECF Nos. 23, 25. On January 26, 2021, however, Petitioner advised that the parties were too far apart in their settlement discussions. ECF No. 26. Accordingly, on March 25, 2021, Respondent duly filed his report formally opposing compensation. Rule 4(c) Report (ECF No. 28), after which the parties briefed entitlement. Pet. Motion (ECF No. 32); Response (ECF No. 33); Reply (ECF No. 34). This matter is now ripe for adjudication.

## II. Relevant Factual Evidence

I have fully reviewed the evidence, including all medical records and affidavits, Respondent's Rule 4(c) report, and the parties' briefing. I find most relevant the following:

- At the time in question, Ms. Hartman was 50 years old, employed as a social worker, and enrolled in the U.S. Army Reserves. Ex. 5 at 17; Ex. 8 at 55-68. She had a non-contributory medical history and was generally healthy. Ex. 3 at 89, 91-93; Ex. 4 at 72-74, 85-87.

- On October 29, 2018, Petitioner received the subject vaccine in her right deltoid muscle. Ex. 7 at 1.

- Twenty-eight (28) days later, on November 26, 2018, Petitioner presented to her primary care practice seeking medical attention for a history of "right arm deltoid muscle pain since getting her flu shot 10/27/2018 [sic], she says it hurts with any movement of the arm, she also reports weakness in that muscle, she takes aleve which helps until it wears off." Ex. 3 at 16. The nurse practitioner did not observe any deformity, erythema, edema, or limitations in range of motion, and did not offer any assessment more specific than "right arm pain." *Id.* She prescribed a one-month course of the non-steroidal anti-inflammatory drug ("NSAID") Naprosyn. *Id.*

2

- On December 19, 2018, Petitioner presented to orthopedic surgeon Dr. Daniel Wartinbee,[3] seeking treatment for right arm and shoulder pain "ever since the end of October… after she had a flu shot," which persisted despite taking the prescription NSAID. Ex. 4 at 12. Dr. Wartinbee corroborated Petitioner's additional complaint of reduced range of motion on forward elevation, abduction, external and internal rotation, and reaching behind her back. *Id.* He recorded that these findings were "consistent with frozen shoulder, or adhesive capsulitis," recommended exercises, and referred to a colleague for further treatment including a potential steroid injection. *Id.* at 12-13.

- The next day, December 20, 2018, Ms. Hartman saw sports medicine doctor Dr. John Hulvey,[4] who recorded a similar history of shoulder and upper arm pain since the flu vaccine on October 29, 2018. Ex. 4 at 9. The pain had worsened over time despite the NSAID and was exacerbated with activity. *Id.* Dr. Hulvey observed decreased range of motion on forward flexion and "pain and weakness with resisted external rotation on the right," which was consistent with mild adhesive capsulitis. *Id.* Petitioner accepted Dr. Hulvey's recommendations of formal physical therapy and try a different prescription NSAID. *Id.* If Petitioner returned seeking further treatment, Dr. Hulvey would evaluate whether "a subacromial versus subacromial/glenohumeral corticosteroid injection" would be more appropriate. *Id.* at 9-10.

- On January 2, 2019, Petitioner began physical therapy for right shoulder pain "following getting a flu shot in October 2018." Ex. 5 at 184. She demonstrated pain (rated at 8/10), weakness, and decreased range of motion, which were recorded to be consistent with infraspinatus tendinopathy. *Id.* Her functional score was 54/100. *Id.* She went on to complete three physical therapy sessions per week over the next six weeks. *Id.* at 185-297.

- On January 7, 2019, Petitioner completed an annual periodic health assessment form in her capacity as a member of the U.S. Army Reserves. Ex. 8 at 55-68. She did not report taking medications other than Aleve or her shoulder injury specifically, but she did report "recurring muscle, joint, or low back pain" and undergoing physical therapy within the past year. *Id.* at 67-68.

---

[3] Dr. Wartinbee specializes in treatment of the hand, wrist, forearm, and elbow. *South Carolina Sports Medicine & Orthopedic Center – Dr. Daniel A. Wartinbee, M.D.*, at https://scsportsmedicine.com/our-team/daniel-a-wartinbee-md (last accessed September 2, 2021).

[4] *South Carolina Sports Medicine & Orthopedic Center – Dr. John T. Hulvey, M.D.*, at https://scsportsmedicine.com/our-team/john-t-hulvey-jr-md (last accessed September 2, 2021).

- The above record's omission of shoulder pain is overshadowed by the records of physical therapy, including on the following day, January 9, 2019, when Petitioner reported pain currently at 1/10 but worst of 8/10 with activity and was observed to have functional limitations. Ex. 5 at 232.

- On March 26, 2019, Petitioner completed the planned physical therapy course. The therapist recorded that she was "rehabilitated." She had made excellent improvements, was experiencing only minimal pain with activities of daily living and some persistent strength deficits, and was expected to make further gains with a home exercise program. Ex. 5 at 295-97.

- On April 10, 2019, Petitioner presented to her primary care provider requesting adjustments of several medications for conditions unrelated to her shoulder. Ex. 3 at 13-15.

- On June 11, 2019, upon returning to Dr. Hulvey, Petitioner reported that her shoulder had largely improved and she had stopped taking prescription NSAIDs. Ex. 6 at 9-12. She had full range of motion and normal strength, but "lingering" pain along the anterior deltoid upon a cross-arm adduction maneuver. *Id.* at 12. Dr. Hulvey planned an MRI arthrogram to evaluate the labrum. *Id.*

- On June 24, 2019, over the telephone, Dr. Hulvey and Petitioner reviewed that the MRI visualized a non-detached posterior supral labral tear with a small para-labral cyst. Ex. 6 at 13; Ex. 11 at 79-81. Petitioner did not feel that her pain was severe enough to warrant Dr. Hulvey's suggestions of a subacromial corticosteroid injection or surgical consultation. Ex. 11 at 79. However, she planned to follow up if the pain worsened to a point that she needed a steroid injection or an exemption from push-ups during her military fitness training. *Id.*

- Records from at least eight (8) intervening encounters with other providers, primarily concerning hip pain, do not address Petitioner's shoulder. Ex. 11 at 44-78.

- On December 5, 2019, Petitioner returned to Dr. Hulvey. She reported "a little bit," "minimal" shoulder discomfort with crossarm adduction" but she had no limitations in daily activity and would continue to monitor her pain rather than seeking treatment such as a steroid injection. Ex. 11 at 40-43.

- At the next follow up on June 4, 2020, Dr. Hulvey recorded that: "During the course of moving boxes, she has noted some recurrence of her right shoulder pain primarily along the anterior deltoid region." The physical examination was normal except for a mildly positive O'Brien's sign. But again, Petitioner deferred any treatment. Ex. 11 at 4-6. There are no further records.

- In her July 29, 2019 affidavit, Petitioner avers that within two days (48 hours) after receiving the flu vaccine, she developed "excruciating" pain in her right shoulder that worsened to sharp stabbing pain with movement, especially upon raising her arm, turning a steering wheel, and lying on her side. Ex. 2 at ¶ 10. The pain worsened and became "extreme" during most activities of daily living such as getting dressed, showering, and cleaning. *Id.* Petitioner does not address her delay in seeking treatment.

- Petitioner also avers that the shoulder injury has negatively impacted her career, participation in the Army Reserves, relationships with her husband and children, and other aspects of her life. *See generally* Ex. 2.

### III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the

5

patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] ... did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Findings of Fact Regarding Onset

In opposing compensation, Respondent has disputed only whether Petitioner established the onset of shoulder pain in the affected shoulder within 48 hours after vaccination, as required by the Table and accompanying Qualifications and Aids to Interpretation for SIRVA. Rule 4(c) Report at 6; Response at 1 (citing 42 C.F.R. §§ 100.3(a)(XII)(A), (c)(10)(ii)).

On this point, Respondent first objects that Petitioner relies on her own claims, set forth in her affidavit, in support of onset. Response at 1-2 (citing section 13(a)(1) (prohibiting a special master from finding facts set forth in section 11(c)(1), including onset within the Table timeframe, "based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion"). Respondent also cites the Court of Federal Claim's prior articulation of the legal standard in *Lett*: "Ultimately, the petitioner must substantiate the occurrence of a compensable, vaccine-related injury with independent evidence." *Id.* (citing *Lett v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 259, 260 (1997).

But *Lett*'s *holding* was merely that "when there is no mention of a seizure in any health record and when the only evidence of a seizure rests on the statements of the petitioners, the requirements of [Section 13(a)(1)] of the Vaccine Act are not met." 39 Fed. Cl. at 263. This is distinguishable from when subsequent medical records *do* document the symptoms at issue, as well as the petitioner's history of a temporal association with the vaccine, as seen here. Reply at 5 (citing *Ray v. Sec'y of Health & Human Servs.*, No. 16-1388V, 2018 WL 7051571 (Fed. Cl. Spec. Mstr. Dec. 17, 2018)); *see also Gear v. Sec'y of Health & Human Servs.*, No. 18-1684V, 2020 WL 5407825, at *9 (Fed. Cl. Spec. Mstr. Aug. 20, 2020). Moreover, the Federal Circuit has recently reasoned, albeit in a different context, that sworn testimony as to facts within the personal knowledge of an individual, even the individual pursuing compensation for an alleged vaccine injury, can represent objective evidence bearing on these kinds of factual issues. *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021). Such an affidavit on its own cannot establish onset, but should be considered within the context of other evidence.

Respondent also contends that Petitioner's medical records are not "independent evidence" because they only recount *Petitioner's own* history of when her shoulder pain began. Response at 2. This argument seeks to evade the long-held and consistent presumption that information contained within medical records, including "information supplied to… health professionals" is trustworthy, because it is intended to facilitate diagnosis and treatment and it is generally supplied shortly after the events in question. *Cucuras*, 993 F.2d at 1528. Consistent with this presumption, in this case, Petitioner first

7

reported her shoulder injury less than one month after vaccination and she repeatedly sought treatment to relieve her pain and loss of function.[5]

Four different medical providers at separate practices chronicled Petitioner's history of shoulder pain "since," "ever since," or "following" the flu vaccine at the end of October. The primary care provider's first record inadvertently provides that the vaccine was on October 27th, but several others wrote the correct date of October 29th. While the records do not expressly state that the pain began within 48 hours, the descriptions of pain "since" the vaccination are persuasive absent evidence supporting an alternative onset *outside* of that Table timeframe (or any other inciting event). There is no such competing evidence to weigh in this case.

Taken altogether, the medical records, accompanied by Petitioner's affidavit, support a finding that she suffered the onset of shoulder pain within 48 hours after the flu vaccination.

V.  **Other Table Requirements and Entitlement**

In light of the lack of other objections and my own review of the record, I find that Petitioner has established the other requirements for a Table SIRVA claim. Specifically, there is not a history of prior shoulder pathology that would explain her injury. 42 C.F.R. § 100.3(c)(3)(10)(i). There is no evidence of any other condition or abnormality that represents an alternative cause. 42 C.F.R. § 100.3(c)(3)(10)(iii).[6] The medical records

---

[5] In the Rule 4(c) Report, Respondent also observed that Petitioner's medical providers did "not specifically find that her vaccination caused shoulder pain." Rule 4(c) Report at 6. This observation might bear on an assessment of causation-in-fact, as to whether the petitioner had established *Althen* prong two and whether Respondent had presented a more likely alternative cause for the injury. But it does not fit within the current inquiry regarding onset. Multiple medical providers accepted, for the purposes of diagnosis and treatment, Petitioner's history that her onset of shoulder pain was shortly after vaccination. In the absence of any evidence supporting an alternative time period or association with another inciting event, these medical records are probative in supporting Petitioner's claim.

[6] Respondent also averred in the Rule 4(c) report: "There is no evidence that the posterior superior labral tear observed in the MRI is in any way related to Petitioner's vaccination. When Petitioner later returned to Dr. Hulvey for additional treatment, examination indicated that her rotator cuff was intact and her pain was attributed to a labral tear. Dr. Hulvey does not relate Petitioner's posterior superior labral tear to her vaccination." Rule 4(c) Report at 6 (citing Ex. 11 at 81, 43, 6). I conclude that Respondent does not contend that this point is a barrier to a Table SIRVA claim, as it was not included in his final brief. However, if Respondent had intended to press this point, I likely would have found it to be unavailing. Within the Vaccine Program, it is frequently recognized that a typical adult, particularly as he or she approaches middle age, commonly tends to develop some degree of "wear and tear" involving the shoulder which can be asymptomatic. SIRVA is characterized by the acute onset of inflammation and pain, which can be exacerbated by that underlying pathology.

and affidavits support that her shoulder pain and reduced range of motion were limited to the left shoulder. C.F.R. § 100.3(c)(3)(10)(iv). The contemporaneous vaccination record reflects the site of administration as her right deltoid. Ex. 7; Sections 11(c)(1)(A) and (B)(i). Petitioner has not pursued a civil action or other compensation. Ex. 1 at ¶ 12; Section 11(c)(1)(E). Finally, Petitioner suffered the residual effects of her injury for more than six months after vaccination. Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## VI.  Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A subsequent order will set further proceedings towards resolving damages.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**  
Brian H. Corcoran  
Chief Special Master