# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1106V
UNPUBLISHED

| | |
|---|---|
| KIMBERLY HARTMAN,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: January 14, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA). |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On July 30, 2019, Kimberly Hartman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of her receipt of an influenza ("flu") vaccine on October 29, 2018, she suffered a shoulder injury related to vaccination ("SIRVA"). Petition (ECF No 1) at 1; Amended Petition (ECF No. 29) at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Following my ruling on entitlement in Petitioner's favor in September 2021, the parties quickly reached an impasse concerning the appropriate award of damages, and thus

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

have submitted that issue to my final determination. For the following reasons, I find that Petitioner is entitled to a damages award of **$75,000.00, representing actual pain and suffering.**

## I. Relevant Procedural History

On September 14, 2021, I found that Petitioner was entitled to compensation for a right SIRVA. Entitlement Ruling (ECF No. 36).[3] However, I declined to set the appropriate *amount* of compensation based solely on Petitioner's briefing, in which she sought $85,000.00 for actual and future pain and suffering. Combined Entitlement Reply and Damages Brief (ECF No. 34) (hereinafter "Brief") at 1, 6-16, and n. 1 (in which Petitioner argued that "it would be futile for the parties to discuss damages informally"). I directed Respondent to revisit his valuation of the case and endeavor to resolve damages informally, but if that was not possible, to brief his position regarding an appropriate damages award within 30 days. Damages Order (ECF No. 37).

On October 14, 2021, Respondent offered a damages brief, in which he contended that Petitioner's case merited an award of only $60,000.00 for actual pain and suffering Response (ECF No. 38). On October 15, 2021, Petitioner filed a reply (ECF No. 40) accompanied by her supplemental affidavit. Ex. 12. The matter is now ripe for adjudication.

## II. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] My prior summary of the prior procedural history and underlying facts, as set forth in the Ruling on Entitlement, are fully incorporated and relied upon herein.

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

#### A. The Parties' Arguments

The only issue to be resolved is the appropriate award of compensation for Petitioner's pain and suffering (as she has not asserted any other damages components).

Petitioner first argues that Section 13(a) only prohibits the special master from relying on a petitioner's claims alone *only* when determining eligibility and entitlement to compensation. Brief at 6.[5] Calculation of the appropriate amount of compensation is governed instead, she maintains, by Section 15, which has no similar requirement. *Id.*[6] She also argues that medical records should not be presumed to be reliable or used as "the sole or even primary index" of pain and suffering, because they are not created for the purpose of illuminating a patient's suffering in the context of treatment. Brief at 5. She recognizes that medical records are useful for finding "medical facts regarding the timing and nature of symptoms experienced, the signs observed or measured, the results of objective testing, the diagnosis assigned, and the response to treatment." *Id.*[7] But consideration of additional testimonial evidence concerning "ongoing losses of productivity at work, the enjoyment in personal pursuits, lost time with family, or the ability to live without depression," bears on what pain and suffering has likely been experienced. Brief at 6-7.

In arguing for $85,000.00 for past and future pain and suffering, Petitioner cites her prompt medical attention; impacts on her life; treatment with over-the counter and prescription non-steroidal anti-inflammatory drugs ("NSAIDS"); course of physical therapy; and doctors' multiple *suggestions* of cortisone steroid injections and consideration of surgery. She asserts that she has significant ongoing pain and exacerbations attributable to the original injury.

Petitioner avers that her clinical course and sequelae are comparable to the petitioners in *Kent*, *Weber*, *Dhanoa*, and *Young*,[8] who received between $80,000.00 to

---

[5] Citing Section 13 (addressing *when* compensation shall be awarded).

[6] Citing Section 15 (addressing *what* compensation shall be awarded).

[7] Citing *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525 (Fed. Cir. 1993).

[8] Citing *Kent v. Sec'y of Health & Human Servs.*, No. 17-73V, 2019 WL 5569493, at *2 (Fed. Cl. Spec. Mstr. Aug. 7, 2019) ($80,000.00); *Weber v. Sec'y of Health & Human Servs.*, No. 17-399, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) ($85,000.00); *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) ($85,000.00 for actual pain and suffering, and also

4

$100,000.00 for actual pain and suffering. Brief at 10-12; Reply at 2-5. Petitioner summarizes the cases, including that the first medical treatment ranged from nineteen (19) days to 5 months after vaccination. Each case involved a relatively conservative course of treatment primarily featuring physical therapy. Multiple petitioners demonstrated ongoing shoulder pain or exacerbations thereof, and several demonstrated that the injuries caused disruptions to their professional and/or personal lives.

By contrast, her case should be distinguished from *Pruett*, in which $75,000.00 was awarded to a petitioner whose MRI suggested only mild injury, never received physical therapy or steroid injections, and experienced only "one to three months of significant pain." Brief at 12; Reply at 5.[9] Petitioner also argues against comparison to *Knauss,* in which $60,000.00 was awarded to a petitioner who demonstrated improvements with physical therapy, cancelled appointments because the pain nearly resolved, and did not suffer significant life disruptions. Brief at 12-13; Reply at 5.[10]

In proposing an award of $60,000.00, Respondent does not address Petitioner's affidavit or her briefing in support of its consideration. He states that the medical records demonstrate that Petitioner "sustained a comparatively minor injury and received conservative treatment." Response at 6. In addition, she had "minimal pain with her normal daily activities" upon discharge from physical therapy. *Id.* A year and a half later, she reported a "recurrence" of pain associated with moving boxes. *Id.* at 7. Respondent also notes that Petitioner was offered, but *declined*, steroid injections or surgical consultations, apparently because "her pain was not severe." *Id.* Respondent cites only to the medical records and not to Petitioner's affidavit. *Id.* at 2-5, 6.

Respondent argues that in *Kent*, *Weber*, *Dhanoa*, and *Young*, the higher awards were justified by more extensive treatment. Response at 7-8. He instead cites the more limited courses of treatment (featuring physical or occupational therapy – but also steroid injections – and concluding within less than a year) seen in *Knauss* as well as *Rayborn*,[11] in which the petitioner was awarded $55,000.00. *Id.* at 7.

---

$10,000.00 for future pain and suffering in the first year); *Young v. Sec'y of Health & Human Servs.*, No. 15-1241W, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019) ($100,000.00).

[9] *Pruett v. Sec'y of Health & Human Servs.*, No., 17-561V, 2019 WL 3297083 (Fed. Cl. Spec. Mstr. Apr. 30, 2019)

[10] *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018).

[11] *Rayborn v. Sec'y of Health & Human Servs.*, No. 18-226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020).

**B. Analysis**

Ms. Hartman's awareness of her injury is not disputed, which leaves only the severity and duration of the injury to be considered. In assessing those factors, I have reviewed the record as a whole, including the medical records, affidavits, and the parties' briefing and cited case law. I considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, my determination is ultimately based on the specific circumstances of this case.

**1. Duration and Severity of Petitioner's SIRVA**

A careful review of the evidence (including both the medical records and affidavits) reflects that after her October 29, 2018, flu vaccination, Ms. Hartman suffered a moderate injury for approximately five months. Her subsequent condition was less significant, and harder to attribute to the vaccination.

Petitioner has established that within 48 hours after vaccination, she developed new acute shoulder pain which was worse upon movements required for most activities of daily living, and also worse when she lay down in an effort to sleep. Ex. 2 at ¶ 10. O-the-counter NSAIDs provided only temporary relief. Petitioner first sought medical attention for her shoulder pain just twenty-eight (28) days after vaccination, with her primary care provider, who prescribed a stronger NSAID. Ex. 3 at 16. But the pain worsened, prompting Petitioner's consultations three weeks later with orthopedic specialists, followed by the start of physical therapy. Those specialists documented her significant pain despite prescription medication, as well as weakness and decreased range of motion, in the acute phase of injury. Ex. 4 at 9-13; Ex. 5 at 184-297. However, I also recognize that during this early phase, Petitioner declined other treatments such as a steroid injection, which suggests that the initial pain was less than "excruciating," *see* Ex. 2 at ¶¶ 7, 10.[12]

However, I do not find support for Petitioner's later recollection that her physical therapy course – consisting of twenty-one (21) sessions between January 2nd – March 26th, 2019 – delivered only "minimal" relief. Ex. 12 at ¶ 4. Upon discharge, she was assessed to have made "excellent improvements" including improved range of motion and strength, and reduced, "minimal" pain with her usual activities of daily living. Ex. 5 at 296-97. From the therapist's perspective, Petitioner's prognosis was "good," and she was considered to be "rehabilitated." *Id.* at 197. I accept that Petitioner had some ongoing

---

[12] I further address Petitioner's proposed reasoning for why she did not seek undergo steroid injections for her shoulder below.

strength deficits, for which she would continue with a home exercise program, but the physical therapy discharge reflects the end of the acute course of her vaccine injury, and active treatment thereof. This is further supported by the limited follow-up appointments with her orthopedist Dr. Hulvey. In June 2019, Petitioner complained of only "lingering" pain upon adduction, which she did not feel warranted a steroid injection or surgical consultation. Ex. 6 at 4-6. At the next appointment concerning her shoulder, in December 2019, Petitioner reported "continued improvement." She had "a little bit of anterior shoulder discomfort with cross-arm adduction." However, the pain was not limiting her activities of daily living, and characterized as "minimal." Ex. 11 at 40-43. Additionally, Petitioner did not complain about her shoulder during at least nine intervening encounters with other providers. Ex. 3 at 13-15; Ex. 11 at 44-78.

I have considered Petitioner's description of the impact on her life including stress and disruptions to her employment; a decreased ability to walk for exercise, which was also a social activity with friends; and difficulty training a therapy dog. *See generally* Exs. 2, 12. I accept these impacts as occurring during the acute course described above, but not necessarily after her discharge from physical therapy.

Additionally, in her initial affidavit dated July 29, 2019, Petitioner averred that she has "been unable to do pushups since [her SIRVA]," and that she would be "required to submit documentation from a physician to be excused temporarily or until [she was] able to perform to standard." Ex. 2 at ¶ 11. But this statement is not borne out in the medical records. *See* Ex. 6 at 6 (June 24, 2019, orthopedist's record that Petitioner "*may* need a note to excuse her from push-ups if she is unable to do these without significant pain") (emphasis added); Ex. 11 at 81 (October 11, 2019, record with the same notation). There is not preponderant evidence in the record that the SIRVA had persistent impacts on her military reserve position.

Petitioner avers that her shoulder injury has been persistent and susceptible to further aggravation. She specifically points to an episode in June 2020, when she experienced severe shoulder pain upon moving boxes in preparation for an interstate move. Ex. 12 at ¶ 6. She avers that the boxes "were not heavy," and moving them "never would have resulted in this pain before I got the vaccine in 2018." *Id.* But it is not definitive – certainly not based on the record in this case – that the inflammation or the resulting reduced range of motion contemplated by the Table listing[13] would continue and render an individual susceptible to later aggravation over one year later. This is especially so in the context of underlying shoulder pathology – here, an unrepaired labral tear, *see* Ex. 11 at 79-81, and other activities that could cause further inflammation and injury.

---

[13] 42 C.F.R. § 100.3(c)(10).

Moreover, Petitioner has not filed any evidence to establish that after her summer 2020 move, she ever followed the recommendation to establish care with a new orthopedist, or for that matter, sought any further treatment for her shoulder.

Finally, I recognize Petitioner's concerns that either long-term use of pain medications or repeated cortisone injections can carry side effects, and that surgery has no guarantee of success. Ex. 12 at ¶ 8. But the medical records do not reflect those concerns. Rather, they suggest that Petitioner concluded that her residual pain was manageable and did not warrant such treatment.[14]

### 2. Comparison to Past Awards

I commend both parties for citing to past reasoned opinions to inform the present analysis of pain and suffering. However, I do not accept Petitioner's comparison to *Young* (awarding $100,000.00), in which the petitioner established that his initial SIRVA was exacerbated by a subsequent vaccination and he was still attending physical therapy four years later. Similarly in *Dhanoa* (awarding $85,000.00), it was accepted that the SIRVA persisted to the point of warranting a repeat cortisone injection three and one-half years later. *Weber* (awarding $85,000.00) recognized that the treatment course was both more extensive, including two steroid injections and dry needling, and complicated by the petitioner's pregnancy and subsequent need to care for her newborn child. Here, Petitioner has established a less severe initial injury and a conservative course of treatment. I also do not see strong evidence linking her SIRVA to her increased pain over one year later, which she attributed to moving boxes.

Nor do I accept Respondent's reliance on *Rayborn* (awarding $55,000.00), in which the petitioner did not establish extensive impacts on his daily life, even in the acute period. And in *Knauss* (awarding $60,000.00), the petitioner was documented to have full active and passive range of motion prior to starting treatment. Those cases also involved several-month delays in medical treatment, supporting that the initial pain was less severe (although similar delays are found in cases awarding higher damages).

---

[14] Notably, Petitioner underwent at least one steroid injection, as well as surgical correction of labral tears in both hips in 2017 – 2018 and a left total hip arthroplasty in February 2020. Ex. 4 at 72-74, 85-87; Ex. 11 at 89-94. At a May 15, 2020, post-operative appointment, Dr. Hulvey recorded that Petitioner was "doing very well overall she is progressed well in terms of functions and mobility." Ex. 11 at 9.

This case has several parallels to *Kent* (awarding $80,000.00), in which the petitioner sought prompt[15] but conservative medical treatment largely consisting of physical therapy, which concluded within a year. Moreover, the primary MRI finding was one torn tendon, which was likely inflamed by the vaccination, as in Ms. Hartman's case. However, the petitioner (and one supporting witness) demonstrated more continuous residual pain, without any other inciting event.

In addition in *Boyd*, I awarded $80,000.00 to a petitioner whose treatment course and repeated deferrals of cortisone injections resembled that of Ms. Hartman.[16] However, that petitioner's medical records documented more significant documented ongoing pain and limitations. Accordingly, I find that an appropriate award for Ms. Hartman's actual pain and suffering is $75,000.00.[17]

## IV. Conclusion

Based on the record as a whole and the parties' arguments, I award Petitioner a lump sum payment of **$75,000.00 for actual pain and suffering.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this decision.[18]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[15] While the first medical record documenting shoulder pain was three months after vaccination, the special master accepted that the petitioner's initial complaints to her medical providers were not recorded.

[16] *Boyd v. Sec'y of Health & Human Servs.*, No. 19-1107V, 2021 WL 4165160 (Fed. Cl. Spec. Mstr. Aug. 12, 2021).

[17] Petitioner notes that in *Pruett*, $75,000.00 was awarded to a petitioner who experienced significant pain for only one to three months, which resolved without physical therapy, cortisone injections, or surgery. Upon review, that opinion recognized other factors including the petitioner's description of harms to his business during the busy season, while foregoing a lost wages claim.

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.